UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

GARY SWANSON,

        Defendant.
_____/

No. CR 06-0692 PJH

**SECOND ADDENDUM TO FINAL PRETRIAL ORDER**

Following the pretrial conference on November 7 and 8, 2007, and in accordance with the court's November 16, 2007 final pretrial order, the government renewed its motions to exclude testimony from defense experts Jerry Hausman and Winston Krone, under Federal Rule of Criminal Procedure 16, Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

Hausman, Krone, and the government's rebuttal expert, Adam Bendell, testified at the December 17, 2007 *Daubert* hearing. Having considered the parties' papers and exhibits, the legal authority, and the testimony, the court rules as follows on the motions, as set forth in more detail on the record.

**DISCUSSION**

**A.    Legal Standards**

Under Federal Rule of Evidence 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 592-93. The Supreme Court later clarified that this applies not only to scientific testimony, but to all expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). In analyzing the reliability of an expert's testimony, this court considers: (1)

whether the theory or technique can be or has been tested; (2) whether the technique has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) the general acceptance of the method within the relevant community. *Daubert*, 509 U.S. at 593-94.

The proponent of the evidence bears the burden of satisfying *Daubert* and Rule 702 by a preponderance of the evidence. *See* Mueller & Kirkpatrick, 3 Federal Evidence § 7:10 (2007 Suppl.); *Redfoot v. B.F. Ascher & Co*, 2007 WL 1593239 at *3 (N.D. Cal. 2007) (citing Advisory Committee Notes to Rule 702).

**B.     Government's Motions**

**1.     Jerry Hausman**

The government moves to exclude Hausman's expert testimony under FRCrP 16, and as irrelevant and unreliable under FRE 702 and *Daubert*. The government also moves to exclude lay testimony from Hausman under FRE 608(b).

### a.     Federal Rule of Criminal Procedure 16

The government moves to exclude Hausman's expert testimony under FRCrP 16 based on Swanson's failure to turn over certain work papers and data relied on by Hausman. As clarified on the record, the outstanding documents and/or data include the following: (1) International Data Corporation ("IDC") pricing data from 1994-1999; (2) IC Insights "McLean Report;" and (3) confidential "long run variable cost" or "LRVC" data supplied to Hausman by Micron in conjunction with Hausman's engagement by Micron during the International Trade Commission ("ITC") proceedings, which comprises the blank column of the chart located at Exh. J to the Bunzel declaration.

Although neither party has addressed the issue, as stated on the record, the court finds that under Rule 16(a)(1)(G) (government's expert disclosures), and Rule 16(b)(1)(c) (defendant's expert disclosures), the burden is generally on the proffering party to produce and disclose the documents and data relied on by that party's expert. Because Swanson

has not produced IDC data from 1994-1999, Hausman will be precluded from offering any expert testimony or opinions based on data from those years. The same is true of the McLean Report. Because Swanson did not produce the report, which concerns the cost of fabrication materials, Hausman will be precluded from testifying on the cost of fabrication materials.

However, a different result is warranted with respect to Micron's LRVC data since Hausman was bound by a confidentiality agreement with Micron to relinquish the data following his engagement. To the extent that one of the parties wishes to introduce testimony and/or evidence concerning the LRVC data, the onus will be on that party to obtain and disclose the data to opposing counsel.

### b. Rule 702/*Daubert*

In terms of relevance, as stated on the record, the scope of Hausman's expert testimony at trial will be limited to that on direct examination at the December 17, 2007 hearing. The court finds that the expert testimony is relevant to Swanson's implicit argument that he viewed the DRAM market in a manner similar to Hausman, and is therefore tantamount to a defense that Swanson was not part of a pricefixing conspiracy. *See, e.g., Continental Baking Co. v. United States*, 281 F.2d 137 (6th Cir. 1960) (if defendant denies entering into an illegal pricefixing agreement, he is permitted to present to the jury his explanation of the factors that brought about similar prices). The court also finds that Hausman's testimony is sufficiently reliable under Rule 702 and *Daubert,* and that the government has sufficient means to impeach Hausman.

### c. Lay Testimony

The court declines to rule on the admissibility of Hausman's lay testimony under FRE 608 and 613, which will be proffered primarily on the issues of Micron's and Sadler's motive and bias, until after Sadler and other Micron employees testify and it becomes apparent how Hausman's impeachment testimony is relevant. Hearsay objections to Hausman's lay testimony will also be resolved at trial. As stated on the record, Hausman

will testify AFTER Sadler and Appleton.

For the above reasons, as more fully explained on the record, the government's motion to exclude both Hausman's expert and lay testimony is DENIED.

**2. Winston Krone**

Krone utilized two software programs, EnCase and Paraben Email Examiner, in retrieving defendant's Outlook email inboxes from Hynix's computer backup tapes, and in reviewing emails from those inboxes. Based on his examination, Krone concluded that Swanson "received 26,485 emails during the period April 1, 2001 through July 1, 2003, and [that] 12,015 of those emails were unopened." The government challenges both the reliability of Krone's methodology and his conclusions.

Having considered Krone's testimony and that of the government's expert, Adam Bendell, the court concludes that both Krone's methodology and conclusions are unreliable. First, the court finds that the error rate as to the twenty-four emails examined by Krone, which approaches 40 per cent, as demonstrated at the hearing and pursuant to Government Exhs. 3 and 25, renders Krone's conclusions unreliable. Second, the court finds that Krone has not sufficiently accounted for obvious alternative explanations for "unopened" emails, which include the possibilities that Swanson viewed the unopened emails through a preview pane and/or manually adjusted the "read" or "unread" status of an email. Third, and very significantly, the court finds Krone's conclusions regarding the overall number of emails received by Swanson to be misleading and very likely to be in error given that Krone only considered emails contained in Swanson's inbox at the exact time when the computer backup tape was created in June 2003, and did not consider or account for emails that had been or may have been deleted from Swanson's inbox as of that date.

Additionally, Krone's conclusion that certain emails contained in Swanson's inbox were unopened is unreliable because Krone did not check to see whether other emails contained within email "threads" or "strings" had been opened. Krone's methodology and

resulting conclusion therefore fails to account for the fact that Swanson may have opened emails contained within email "threads," or "strings," thus reading all or a portion of the emails contained within that thread or string, without being required to individually open each email of the thread or the string. As demonstrated by the testimony at the hearing and government exhibit 25, this was the case with at least five of the twenty-three emails that Krone concluded were "unread."

While there is nothing to suggest that the software programs used by Krone were defective or that the data they enabled him to collect was inaccurate, it was Krone's methodology – reliance solely on the data collected by these programs to support his conclusions about the numbers of emails received and opened, read and unread by Swanson, without consideration of the potential errors and alternative explanations referred to above – that is highly suspect. Both his methodology and his conclusions were proven to be unreliable at the hearing. As a consequence, he will not be permitted to offer expert testimony at trial.

The government's motion to exclude expert testimony from Krone under Rule 702 and *Daubert* is GRANTED.

**IT IS SO ORDERED.**

Dated: December 18, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge